United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE JOSEPH JIMENEZ,<br><br>Petitioner,<br><br>v.<br><br>STUART SHERMAN,<br><br>Respondent. | Case No. 15-cv-03288-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Jesse Joseph Jimenez seeks federal habeas relief from his state convictions because (1) there was insufficient evidence that he annoyed or molested a child under the age of 18; (2) prejudicial evidence regarding his parole conditions was admitted; (3) the trial court gave incorrect jury instructions in several instances; (4) there was prosecutorial misconduct; (5) defense counsel rendered ineffective assistance; and (6) there was cumulative error. None of these claims has merit and, for the reasons set forth below, the petition for habeas relief is DENIED.

## BACKGROUND

In December 2012, a Santa Clara County Superior Court jury found Jimenez guilty of committing a lewd and lascivious act on a child under the age of 14 (California Penal Code § 288(a)), and annoying or molesting a child under the age of 18 (*id.* § 647.6(c)(2)).

United States District Court
Northern District of California

After the jury rendered its verdicts, the trial court held a trial on the prior conviction allegations. It found that Jimenez had seven prior convictions for committing lewd and lascivious acts on a minor (violations of California Penal Code § 288). In 2013, Jimenez was sentenced to a total term of 85 years to life in state prison. His efforts to overturn his conviction in state court were unsuccessful. This federal habeas petition followed.[1]

The victim of these crimes was AL., a 12-year-old girl, the daughter of B. Doe, a member of Jimenez's Bible study group:

> In 2011, B. Doe was the single father of three children, including an 18–year–old boy, a 16–year–old boy, and a 12–year–old girl, AL. B. Doe first met [Jimenez] at a men's fellowship meeting at a church.
>
> In March 2011, B. Doe and [Jimenez] attended a Bible study group at the home of church member A.V. The group decided that B. Doe and [Jimenez] would make a presentation at the next Bible study. B. Doe invited [Jimenez] to his home to prepare their presentation. After that, [Jimenez] often visited the Doe home and B. Doe and [Jimenez] became friends. During his visits, [Jimenez] mainly socialized with AL. He played card games more often with AL. than with her brothers. [Jimenez] hugged AL. on more than one occasion, but she did not think anything about it.
>
> An incident occurred in July 2011 when [Jimenez] was playing cards with AL. in the kitchen. B. Doe was in the living room sitting on the couch about 15 feet away from them. While B. Doe was watching television he heard [Jimenez] say to AL., 'That's okay.' He then saw [Jimenez] slowly and deliberately swipe his hand down AL.'s forearm to her hand while gazing into her eyes.
>
> After that incident, B. Doe told his sons that he did not want [Jimenez] to be alone with AL. Due to B. Doe's work schedule, his children were home alone from the time they got out of school at 2:30 p.m. until he arrived home at 6:00 p.m. or 7:00 p.m. On two occasions, B. Doe arrived home to find groceries that he had not bought. AL. recalled that [Jimenez] had brought the groceries to their home. On another occasion, B. Doe was home early from work when he heard a knock on the door. B. Doe looked through the peephole but could not see anyone. He opened the door and saw [Jimenez] standing to the side holding groceries. [Jimenez] had not asked permission to visit and B. Doe told him he did not need groceries.

---

[1] Jimenez did not file a traverse, nor did he ask for more time to file one.

During a visit to the Doe home, [Jimenez] mentioned that he wanted to buy AL. a pair of shoes.  B. Doe agreed.  One day after church, [Jimenez] showed an advertisement to B. Doe and told him that he would like to get shoes for AL. that were on sale.  B. Doe started to feel uncomfortable about the time that [Jimenez] was spending with AL.  He told [Jimenez] that he could buy shoes for his sons, but [Jimenez] declined.  B. Doe also told [Jimenez] that he had already bought AL. a pair of shoes.

Soon after that conversation with B. Doe, [Jimenez] came to the house with a pair of pink Converse tennis shoes for AL.  Those were the same kind of shoes that B. Doe had been buying for her.  AL. tried on the shoes, but they did not fit.  [Jimenez] took the shoes back and returned with the same pair in a different size.  While AL. was sitting down and trying the shoes on, [Jimenez] put his hand flat on her thigh for a few seconds, which made her feel 'weird.'

Around Labor Day of 2011, an incident occurred during a barbecue hosted by A.V. and his wife at their home.  B. Doe, his children, and [Jimenez] attended the barbecue.  A.V.'s dog had puppies and B. Doe had previously told AL. that she could not have one.  While B. Doe was cooking, he overheard a conversation between [Jimenez] and AL.  [Jimenez] told AL. that he could get the puppy, it would live at AL.'s house and belong to both of them, and he would pay for its food.  [Jimenez] also told AL. that he would visit the puppy at her house.  B. Doe then announced to everyone that they were not getting a puppy.

A.V. recalled other incidents involving [Jimenez] and AL. that struck him as unusual.  At a car show, A.V. saw [Jimenez] offer to bring AL. a plate of food.  AL. declined and A.V.'s wife jumped in and said she would get a plate for AL.  On another occasion, A.V. and his wife were watching television with AL. and [Jimenez].  AL. was sitting on the arm of A.V.'s chair.  [Jimenez] was standing behind them and tapping AL. with his feet.  A.V.'s wife saw the tapping and told AL. to come sit with her.  A.V. also saw [Jimenez] put his hand on AL.'s shoulder when they were playing cards.

B. Doe was concerned after hearing the conversation between [Jimenez] and AL. about the puppy.  He mentioned his concerns to A.V. and they conferred with their pastor.  The pastor went on the Megan's Law website and they discovered that [Jimenez] was an offender.  Later, B. Doe called the police and they came to the house to interview him and AL.

(Ans., Ex. G (State Appellate Opinion, *People v. Jimenez*, No. H039607, 2014 WL 7150176 (Cal. Ct. App. Dec. 26, 2014) (unpublished)) at 6-8.)

3

1  The jury also heard evidence regarding prior uncharged offenses from S. Doe and

2  A. Doe.  S. Doe testified that Jimenez, a friend of her father, had sex with her many times

3  when she was 14.  (Ans., Ex. G at 4.)  A. Doe testified that when she was 10, Jimenez, a

4  friend of her father, woke her one night, led her to a sofa, bent her over, touched her

5  breasts, and tried to kiss her.  He also touched her breasts on another occasion.  (*Id.* at 5.)

6  **STANDARD OF REVIEW**

7  Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

8  this Court may entertain a petition for writ of habeas corpus "in behalf of a person in

9  custody pursuant to the judgment of a State court only on the ground that he is in custody

10  in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

11  § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated

12  on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted

13  in a decision that was contrary to, or involved an unreasonable application of, clearly

14  established Federal law, as determined by the Supreme Court of the United States; or

15  (2) resulted in a decision that was based on an unreasonable determination of the facts in

16  light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

17  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

18  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

19  of law or if the state court decides a case differently than [the] Court has on a set of

20  materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13

21  (2000).

22  "Under the 'unreasonable application' clause, a federal habeas court may grant the

23  writ if the state court identifies the correct governing legal principle from [the] Court's

24  decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at

25  413.  "[A] federal habeas court may not issue the writ simply because that court concludes

26  in its independent judgment that the relevant state court decision applied clearly

27  established federal law erroneously or incorrectly.  Rather, that application must also be

28  unreasonable."  *Id.* at 411.  A federal habeas court making the "unreasonable application"

4

United States District Court
Northern District of California

1    inquiry should ask whether the state court's application of clearly established federal law

2    was "objectively unreasonable." *Id.* at 409.

3         When presented with a state court decision that is unaccompanied by a rationale for

4    its conclusions, a federal court must conduct an independent review of the record to

5    determine whether the state court decision is objectively reasonable. *See Delgado v.*

6    *Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  This "[i]ndependent review is not a *de novo*

7    review of the constitutional issue, but rather, the only method by which [a federal court]

8    can determine whether a silent state court decision is objectively unreasonable." *See*

9    *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "[W]here a state court's decision

10   is unaccompanied by an explanation, the habeas petitioner's burden still must be met by

11   showing there was no reasonable basis for the state court to deny relief." *See Harrington*

12   *v. Richter*, 562 U.S. 86, 98 (2011).

**DISCUSSION**

13

**I.    Sufficiency of the Evidence**

14

15        Jimenez claims there was insufficient evidence that he annoyed or molested a child

16   under the age of 18, within the meaning of California Penal Code section 647.6.  (Pet. at

17   6.)  His conduct, he asserts, was not "objectively and unhesitatingly disturbing, regardless

18   of his subjective intent."  (*Id.*)

19        The state appellate court rejected this claim.  It found there was evidence that there

20   were at least three incidents that met the requirements of the statute.  They occurred when

21   Jimenez (1) swiped his hand on AL.'s arm while they were playing cards; (2) placed his

22   flat hand on her thigh while she was trying on the shoes he bought her without her father's

23   permission; and (3) tapped her with his feet while they were watching television.  These

24   incidents "constitute conduct that would be unhesitatingly irritating or disturbing to a

25   normal person."  (Ans., Ex. G at 11-12.)  This was not a case, the state appellate court

26   held, in which the evidence showed nothing "more than friendly noncriminal activity on

27   the part of the defendant toward the girl."  *Id.* (quoting *People v. Carskaddon*, 49 Cal. 2d

28   423, 426 (Cal. 1957)).  The state court noted that Jimenez did not challenge the sufficiency

5

1   of the evidence as the two other elements of section 647.6, that the alleged victim was

2   under the age of 18 and that there was a sexual motivation for his conduct.  (Ans., Ex. G at

3   11.)

4        When reviewing a state court's conviction for sufficiency of the evidence, a federal

5   court must determine whether, "after viewing the evidence in the light most favorable to

6   the prosecution, any rational trier of fact could have found the essential elements of the

7   crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Only if

8   no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the

9   writ be granted.  *Id.* at 324.  "[T]he only question under *Jackson* is whether [the jury's]

10  finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v.*

11  *Johnson*, 132 S. Ct. 2060, 2065 (2012).  In addition to this highly deferential standard, a

12  federal court must accord "considerable deference" to a state court's determination that

13  there was sufficient evidence under *Jackson*.  *Id.*

14       Under section 647.6(a), "Every person who annoys or molests any child under 18

15  years of age shall be punished by a fine not exceeding five thousand dollars ($5,000), by

16  imprisonment in a county jail not exceeding one year, or by both the fine and

17  imprisonment."  "Annoy" and "molest" are synonymous and refer to "conduct designed to

18  disturb, irritate, offend, injure, or at least tend to injure, another person." *People v. Lopez*,

19  19 Cal. 4th 282, 289 (Cal. 1998).  Touching is not required.  *Id.*  The prohibited conduct

20  need only be conduct that is "(1) conduct a normal person would unhesitatingly be irritated

21  by,' and (2) 'conduct motivated by an unnatural or abnormal sexual interest."  The jury

22  must use an objective "normal person" standard, not a subjective one.  *Id.* at 290.  It is

23  therefore <u>immaterial</u> whether the victim herself found the conduct irritating or disturbing.

24  *Id.*

25       An offense under section 647.6(a) is deemed a felony if the defendant has a prior

26  conviction for an offense enumerated under section 647.6(c)(2), which includes a

27  conviction under California Penal Code § 288 for committing a lewd or lascivious act on a

28  child under the age of 14.  As noted above, the trial court found that Jimenez had many

United States District Court
Northern District of California

6

convictions under section 288.  (Ans., Ex. G at 8.)

Sufficient evidence existed to support the jury's verdict.  First, it is undisputed that AL. was under the age of 18 and that Jimenez had prior qualifying convictions under section 288.  Second, there was evidence that Jimenez's conduct was objectively irritating or disturbing.  Slowly swiping his hand along a 12-year-old's arm while staring into her eyes and placing the flat of his hand against her bare thigh are such conduct.  The acts were uninvited attempts at physical intimacy.  It was reasonable for the state court to determine that such conduct was objectively annoying.  Because the state court's rejection of this claim was reasonable, its decision is entitled to AEDPA deference.  The claim is DENIED.

## II.    Admission of Evidence of Parole Restrictions

Jimenez was under sex offender parole restrictions at the time he met AL.  He was (1) prohibited from contacting anyone under the age of 18; (2) prohibited from contacting females between the ages of 12 and 18 years; (3) required to immediately inform his parole agent "regarding any contact with a minor, whether it is 'accidental' or not"' and (4) prohibited from loitering within 100 yards of the perimeter of places where children congregate.  (Ans., Ex. G at 21.)  He claims it violated his right to due process and prejudiced him when the trial court admitted evidence of these parole restrictions.  (Pet. at 9.)  The Court construes this claim as an objection to the admission of character or propensity evidence.

This claim was rejected by the state appellate court.  Such evidence was relevant to Jimenez's intent.  Intent was an element of section 288, which is violated when a person touches a child with the specific intent "of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."  Cal. Penal Code § 288(a).  Intent was also an element of section 647.6, with which Jimenez was also charged:  "motivated by an unnatural or abnormal sexual interest."  Jimenez's "contacts with AL. were obviously in violation of his sex offender parole conditions, and it could be reasonably inferred from his violations that defendant had the sexual intent required" to be found

United States District Court
Northern District of California

1   guilty for both offenses.  (Ans., Ex. G at 21-22.)  Furthermore, the parole restriction

2   evidence was not "unduly prejudicial in light of the other trial evidence that had been

3   admitted with regard to defendant's prior sexual offenses."  (*Id.* at 22.)  As noted,

4   Jimenez's prior sexual victims, S. Doe and A. Doe, testified about their sexual molestation

5   at his hands.  (*Id.*)

6        Habeas relief is not warranted here because no remediable federal constitutional

7   violation occurred.  First, a petitioner's due process right concerning the admission of

8   propensity evidence is not clearly established for purposes of review under AEDPA, the

9   Supreme Court having reserved this issue as an "open question."  *Alberni v. McDaniel*,

10  458 F.3d 860, 866-67 (9th Cir. 2006).  Second, even if the evidence were prejudicial, the

11  Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly

12  prejudicial evidence constitutes a due process violation sufficient to warrant issuance of

13  the writ."  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Third, any claim

14  that the state court erred in admitting the evidence under state law is not remediable on

15  federal habeas review.  The state appellate court's ruling that the evidence was properly

16  admitted under state law binds this federal habeas court.  *Bradshaw v. Richey*, 546 U.S. 74,

17  76 (2005).  Finally, due process is violated only if there are no permissible inferences that

18  the jury may draw from the evidence.  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th

19  Cir. 1991).  Here, the jury could have made permissible inferences regarding Jimenez's

20  intent in touching AL.

21        The state court's rejection of this claim was reasonable and is entitled to AEDPA

22  deference.  This claim is DENIED.

23  **III.   Jury Instructions**

24        Jimenez raises six claims of instructional error.  He claims the trial court gave

25  incorrect instructions (A) in response to a jury question regarding the objective, normal

26  person standard of section 647.6; (B) on the elements of section 288(a) and then failed to

27  correct this instructional error in its response to a jury question; (C) on the use of prior act

28  evidence; (D) on unanimity; (E) regarding the jury's confusion regarding consideration of

United States District Court
Northern District of California

8

1    punishment; and (F) to the jury when it was deadlocked.

2    **A.      Response to Jury Question About Section 647.6**

3        Petitioner claims the trial court failed to provide legally correct answers to jury

4    questions about the normal person standard of California Penal Code § 647.6.  (Pet. at 8.)

5    The relevant facts were summarized by the state appellate court:

6        Jury note No. 1, dated December 6, 2012, states:  'CALCRIM 1122 Count
7        2 Point 2 ('A  Normal  person,'  without  hesitation,  would  have  been
         disturbed, irritated, . . . '[)]'  [¶]  DOES THE NORMAL PERSON HAVE
8        TO BE THE VICTIM?  [¶]  (Can the Father or friend [A.V.] be the normal
9        person disturbed . . . by the defendant's conduct)'

10       The trial court's response to jury note No. 1 states:  'Does the normal person have
11       to be the victim?  [¶]  Answer:  No  [¶]  Can the father or friend be the normal
         person  . . . ?  [¶]  Answer:  'A normal person' is an objective standard.'

12
13       Jury note No. 2 states:  'Can we know the dates of the previous 2 convictions and
         the length of incarceration after those?  [¶]  Thank you!'

14
15       The trial court's response to jury note No. 2 states:  'Please refer to exhibits 4, 5 &
         6.'

16       Exhibit 4 includes the information, amended information, a minute order, and the
17       abstract of judgment (showing a conviction of violating section 288, subd. (a) and a
         total term of eight years) in *People v. Jimenez* (Super. Ct. Santa Clara County,
18       1997, No. 192298).  The victim in that case was A. Doe.

19
20       Exhibit 5 includes the felony complaint, two minute orders, and the abstract of
         judgment (showing convictions of five counts of violating section 288, subd. (a) and
21       one prior section 288, subd. (a) conviction and a total term of 16 years) in *People v.
         Jimenez* (Super. Ct. Santa Clara County, 1998, No. 204087).  The victim in that
22       case was J. Doe, who did not testify at trial.

23       Exhibit 6 includes fingerprint cards and booking photo in *People v. Jimenez* (Super.
24       Ct. Santa Clara County, 1998, No. 204087).

25   (Ans., Ex. G at 12-13.)

26       On appeal, Jimenez contended that the trial court's response was erroneous.  It

27   incorrectly conveyed that AL.'s father's opinion could be considered, but not AL.'s.  The

28   court should have instructed the jury that "the phrase 'normal person' meant that the jury

9

1    must determine whether a 'reasonable person' in the child's position, without regard to

2    [defendant's] intent, would have been unhesitatingly offended." (*Id.* at 14-15.)

3        This claim was rejected by the state court. The trial court's response was a correct

4    statement of the law. The law mandates the use of an objective standard (the "normal

5    person"), which is to be considered without regard to the malfeasant's intent or whether

6    the victim herself was irritated or disturbed. *Lopez*, 19 Cal. 4th at 289. The trial court's

7    response accurately conveyed this. Furthermore, the original instructions on section 647.6

8    "were full and complete." (Ans., Ex. G at 16.)

9        "When a jury makes explicit its difficulties, a trial judge should clear them away

10   with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). The

11   trial judge has a duty to respond to the jury's request for clarification with sufficient

12   specificity to eliminate the jury's confusion. *See Beardslee v. Woodford*, 358 F.3d 560,

13   574-75 (9th Cir. 2004). But when a trial judge responds to a jury question by directing its

14   attention to the precise paragraph of the constitutionally adequate instruction that answers

15   its inquiry, and the jury asks no follow up question, a reviewing court may "presume[] that

16   the jury fully understood the judge's answer and appropriately applied the jury

17   instruction." *Waddington v. Sarausad*, 555 U.S. 179, 196 (2009). Just as a jury is

18   presumed to follow its instructions, it is presumed to understand a judge's answer to a

19   question. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

20       Habeas relief is not warranted here. First, this Court is bound by the state court's

21   determination that the trial court's note correctly stated the law. *Richey*, 546 U.S. at 76.

22   This dooms any claim that the trial court's note was an incorrect response.

23       Second, the jury asked no further questions. Therefore, this Court must presume

24   that the jury fully understood the answer and appropriately applied the instruction.

25   *Sarausad*, 555 U.S. at 196; *Weeks*, 528 U.S. at 234. Jimenez has not overcome this

26   presumption. Because the state appellate court's determination was reasonable, it is

27   entitled to AEDPA deference. Accordingly, this claim is DENIED.

28

United States District Court
Northern District of California

**B.     Instruction on Section 288(a)**

The trial court gave the jury CALCRIM No. 1110,[2] which states in part that the touching prohibited by section 288(a) "need not be done in a lewd or sexual manner." Jimenez believes this instruction violated his right to due process because it (1) allowed the jury to convict him even if the touching was not committed with sexual intent; and (2) failed to inform the jury that section 288 requires a finding that a defendant had a present or contemporaneous sexual intent at the time of the touching.  (Pet. at 11.)

These claims were rejected by the state appellate court.  Any touching, even if it has the "outward appearance of innocence," is prohibited by the statute if it is performed "with the intent of arousing the sexual desires of either the perpetrator or the child."  (Ans., Ex. G at 24-25.)  It need not be lewd or lascivious.  (*Id.* at 25.)

But the touching must be contemporaneous with the intent, an idea put forth and reinforced by the jury instructions.  (*Id.* at 26.)  Even the disputed instruction made this clear.  CALCRIM No. 1110 requires that the defendant "committed the act *with the intent* of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child."  (Ans., Ex. A, Vol. 2 at 215.) (emphasis added).  Other instructions reinforced this notion.  For example, CALCRIM No. 251 informed the jury that "[t]he crimes charged in this case require proof of the union, or joint operation, of act and wrongful intent."  (*Id.* at 204.)  It also said that a defendant "must not only intentionally commit the prohibited act, but must do so with a specific intent."  (*Id.*)  Another instruction, CALCRIM No. 225, stated that "The People must prove not only that the defendant did the acts charged, but also that he acted with a particular intent/or mental state."  (*Id.* at 201.)  Jimenez's claims that the instruction misdirected or misled the jury, or gave them an inaccurate idea of the law, or were in need of supplement, were found to be without merit.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show the disputed instruction by itself so infected the entire trial that the resulting

---

[2] CALCRIM No. 1110 is titled "Lewd or Lascivious Act:  Child Under 14 Years (Pen. Code, § 288(a))."

United States District Court
Northern District of California

conviction violates due process.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *Id.*  In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Habeas relief is not warranted here.  The instructions clearly and repeatedly conveyed to the jury exactly what Jimenez believes should have been conveyed.  The jury had to find that Jimenez acted with a contemporaneous sexual intent.  Several instructions, as described above, communicated this.  The state appellate court's rejection of this claim was reasonable, and therefore is entitled to AEDPA deference.  This claim is DENIED.

### C.    Response to Jury Question Regarding Prior Act Evidence

The trial court instructed the jury on how to consider the evidence of prior sex offenses (CALCRIM No. 1191).  The court did not include an optional prefacing sentence of the instruction, which reads, "[Do not consider this evidence for any other purpose [except for the limited purpose of <insert other permitted purpose, e.g., determining the defendant's credibility>].]"  However, the trial court did a general instruction (CALCRIM No. 303) that if evidence was admitted for a limited purpose, the jury had to consider the evidence only for that limited purpose.  (Ans., Ex. A, Vol. 2 at 208.)

During deliberations, the jury told the court it could not reach a verdict on Count 1 (section 288):

After the jury informed the trial court during deliberations that it was not able to reach a verdict on count 1, a juror asked the following question:

JUROR NO. 7:  It might be helpful if you could give us some — I don't know if it's further instruction or re-clarify instruction about the role of prior convictions.  We heard testimony from prior victims.  How much role does that play in our decision on this case?

THE COURT:  Okay.  So the jury instruction you want to look at is . . . [CALCRIM No.] 1191.  And that's the one that tells you how you can use

United States District Court
Northern District of California

and consider the evidence regarding uncharged acts.  And that sets out the parameters.  [¶]   And, you know, just be mindful of the fact that those uncharged acts are just one factor.  You need to consider the People still need to prove the elements beyond a reasonable doubt.  [¶]  So, you have that jury instruction.  And then we have defined the uncharged acts for you.  There is a different burden of proof for the People as to those uncharged acts.  So, that's a preponderance of the evidence.

JUROR NO. 7:  Wait, wait, wait.  The uncharged acts?

THE COURT:  We are talking about the acts that relate to [S. Doe, A. Doe, and J. Doe].

JUROR NO. 7:  I see.

THE COURT:  Those are the uncharged acts.

JUROR NO. 7:  Right.

THE COURT:  The only acts in this case, the alleged acts, are as to [AL].

JUROR NO. 7:  Right.

THE COURT:  So, it's CAL–CRIM [No.] 1191 that tells you what you can do.

JUROR NO. 7:  That role that plays.

THE COURT: Exactly. And what you can use that for.

JUROR NO. 7:  Thank you.

THE COURT:  Okay.  And that's about all I can give you on that.  [¶]  And I can tell you that that's an issue that juries often struggle with.

(Ans., Ex. G at 28-29.)

Jimenez claims that the court's response allowed the jury to use prior acts in an unrestricted way.  These instructions also violated his constitutional right to have the jury determine that the actual elements of the charged crime had been proved.  (Pet. at 13.)

This claim was rejected by the state appellate court.  The trial court's response to the jury's questions "adequately informed the jury that the evidence [regarding] . . . the prior convictions and prior victims was admitted for a limited purpose":

13

United States District Court
Northern District of California

1

2

3

4

5

6

7

Here, the record reflects that the instructions (1) expressly instructed the jury that a conclusion that defendant committed the uncharged offenses was only one factor to consider along with all the other evidence and was not sufficient by itself to prove that the defendant is guilty of the crimes charged in counts one and two; (2) expressly instructed the jury that evidence admitted for a limited purpose could be considered 'only for that limited purpose and for no other;' and (3) reminded the jury during deliberations that the evidence admitted regarding the uncharged acts and the prior victims was 'just one factor' and the People needed to prove the elements of the charged crimes beyond a reasonable doubt.

8

(Ans., Ex. G at 31.)

9

10

11

12

13

14

Habeas relief is not warranted here.  First, this Court is bound by the state court's determination that the trial court gave the jury the correct law during deliberations and in response to a juror's question.  *Richey*, 546 U.S. 74, 76 (2005).  Second, the jury asked no further questions.  Therefore, this Court must presume that the jury fully understood the answer and appropriately applied the instruction.  *Sarausad*, 555 U.S. at 196; *Weeks*, 528 U.S. at 234.  Jimenez has not overcome this presumption.

15

16

17

18

19

20

21

22

23

Third, the instructions clearly limited the use of the evidence.  First, the instructions reaffirmed that if evidence was admitted with instructions on its use, the evidence could be considered only within the bounds of those instructions.  Second, the instructions clearly stated that the jury could not convict simply on the evidence of prior acts.  The instructions reminded the jury that the evidence was but one part of the overall record and even if the prosecutor established that petitioner had committed the uncharged crimes, he still had to prove all the elements of the charged offenses true beyond a reasonable doubt.  Because the state appellate court's determination was reasonable, it is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

24

### D.    Unanimity Instruction

25

26

27

Jimenez claims the trial court's unanimity instructions violated his right to due process.  The jurors were given unanimity instructions CALCRIM Nos. 3500 ("Unanimity") and 3501 ("Unanimity:  When Generic Testimony of Offense Presented").

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALCRIM No. 3500 reads:

The defendant is charged with <insert description of alleged offense> [in Count ___] [sometime during the period of ___ to ___]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense.  You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed.

CALCRIM No. 3501 reads:

The defendant is charged with <insert description[s] of alleged offense[s]> [in Count[s] ___] sometime during the period of ___ to ___.  [¶] The People have presented evidence of more than one act to prove that the defendant committed (this/these) offense[s].   You must not find the defendant guilty unless:  [¶]  1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed [for each offense]; [¶]  OR [¶]  2.  You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged].

CALCRIM No. 3501 is "an alternative instruction to CALCRIM No. 3500."  *People v. Fernandez*, 216 Cal. App. 4th 540, 556 (Cal. Ct. App. 2013).  No. 3500 is given when "the evidence indicates the jurors might disagree as to the particular act defendant committed."  But if there is no reasonable likelihood the jurors will disagree as to the particular acts, No. 3501 is given.  *Id.* at 555-556 (citation omitted).

According to Jimenez these instructions impermissibly allowed the jurors to find guilt without agreeing that any one act sufficiently proved the charged offense.  (Pet. at 15.)

This claim was rejected by the state appellate court.  Under these instructions, the jury had to unanimously agree for each charge that Jimenez was guilty of committing a specific criminal act (and that they were agreed on which specific act it was for each charge), or to unanimously agree that every act alleged by the prosecution was proved.

Habeas relief is not warranted here.  First, due process does not require that the jury agree as to the specific acts that constituted commission of the crimes charged.  The

15

1    Supreme Court has held that "different jurors may be persuaded by different pieces of

2    evidence, even when they agree upon the bottom line.  Plainly there is no general

3    requirement that the jury reach agreement on the preliminary factual issues which underlie

4    the verdict." *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackman, J,

5    concurring); *see also Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (rule that jurors not

6    required to agree upon single means of commission of crime, citing *McKoy*, applies

7    equally to contention they must agree on one of the alternative means of satisfying mental

8    state element of crime).

9        Second, the instructions cannot reasonably be read to support Jimenez's claim.  The

10   instructions required that the jury agree that Jimenez committed at least one criminal act

11   for each charged offense.  Either they could agree on one specific act for each charge, or

12   agree that he committed all the acts alleged.  This Court must presume the jurors followed

13   their instructions.  *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

14       The state appellate court's rejection of Jimenez's claim was reasonable and is

15   entitled to AEDPA deference.  This claim is DENIED.

16       **E.     Jury's Consideration of Possible Punishment**

17       During deliberations, the jury sent this message to the judge:  "Can we know the

18   dates of the previous 2 convictions and the length of incarceration after those?  [¶]  Thank

19   you!"  The trial court instructed the jury to "refer to exhibits 4, 5 & 6."  (Ans., Ex. G at 16-

20   17.)  Exhibits 4 and 5 contained abstracts of judgment for his prior convictions, which

21   included the sentences imposed for those convictions.

22       Jimenez asserts the trial court should have admonished the jury that it was not to

23   consider the punishment he might receive if convicted, or consider the punishment he

24   received previously.  He claims the failure to give this instruction violated his right to due

25   process.  (Pet. at 19.)

26       This claim was rejected by the state appellate court because the trial court had twice

27   before instructed the jury that it was not to consider the possible punishment Jimenez

28   might receive.  (Ans., Ex. G at 16-17.)

United States District Court
Northern District of California

1    In general, juries determine facts, judges determine sentences:

2        It is well established that when a jury has no sentencing function, it should
3        be admonished to 'reach its verdict without regard to what sentence might
         be imposed.' *Rogers v. United States*, 422 U.S. 35, 40 (1975).    The
4        principle that juries are not to consider the consequences of their verdicts
         is a reflection of the basic division of labor in our legal system between judge
5        and jury.   The jury's function is to find the facts and to decide whether, on
         those facts, the defendant is guilty of the crime charged.   The judge, by
6        contrast, imposes sentence on the defendant after the jury has arrived at a
         guilty verdict.   Information regarding the consequences of a verdict is
7        therefore irrelevant to the jury's task.     Moreover, providing jurors
         sentencing information invites them to ponder matters that are not within
8        their province, distracts them from their factfinding responsibilities, and
9        creates a strong possibility of confusion.

10   *Shannon v. United States*, 512 U.S. 573, 579 (1994).

11           Habeas relief is not warranted here.   First, this Court must presume the jurors

12   followed their instructions and disregarded the sentencing information in the exhibits.   *See*

13   *Marsh*, 481 U.S. at 211.   Jimenez has not overcome this presumption.   He provides nothing

14   beyond speculation that the jury failed to follow their instructions.   Second, there is no

15   Supreme Court decision clearly establishing the constitutional impermissibility of a jury in

16   a non-capital case considering what the defendant's punishment might be.   Consequently,

17   habeas relief must be denied.   28 U.S.C. § 2254(d).   The case cited above, *Shannon*,

18   contains precatory, not mandatory, language.   It warns that as a general rule juries should

19   not consider the possible sentence.   It does not hold that a conviction is constitutionally

20   invalid because a jury may have considered such information.   The state appellate court's

21   rejection of this claim was reasonable and is therefore entitled to AEDPA deference.

22       **F.      Instructions to a Deadlocked Jury**

23           Jimenez claims the trial court's instructions to the jury during its deadlock were a

24   coercive "*Allen* charge."[3]   (Pet. at 21.)   The facts were summarized by the state appellate

25

26   _____

27   [3] An "'*Allen* charge' is the generic name for a class of supplemental jury instructions given
     when jurors are apparently deadlocked; the name derives from the first Supreme Court
28   approval of such an instruction in *Allen v. United States*, 164 U.S. 492, 501–02, 17 S. Ct.
     154, 41 L.Ed. 528 (1896).   In their mildest form, these instructions carry reminders of the

United States District Court
Northern District of California

court as follows:

> After the jury had begun deliberations, the court convened in the presence of the jury regarding a jury note. The following colloquy then occurred.
>
> THE COURT:  Juror Number Seven is the foreperson.  [¶]  So, we have received a note saying that the jury is not able to reach an agreement as to count one.  Count one point two.  So, let's just say count one.  [¶]  Now, I want to ask you some questions, and then I'm going to let anybody else augment the foreperson's answers.  [¶]  So, if you have been unable to reach a verdict as to count one, have you been able to reach a unanimous verdict as to count two?
>
> JUROR NO. 7: Yes.
>
> THE COURT:  Okay.  And when I ask you these questions, it's very important to answer them in a very neutral way and not give us any indication about how you are leaning, as to whether it's conviction or acquittal.  [¶]  Okay.  So we have a decision as to count two.  Did you reach that decision yesterday or this morning?  Yesterday?
>
> JUROR NO. 7:  I believe it was yesterday.
>
> THE COURT:  Okay.  So, in terms of count one, have you been taking ballots?
>
> JUROR NO. 7:  We have taken a ballot.
>
> THE COURT:  A ballot, okay.  [¶]  And can you tell me what the breakdown is, without telling us which way?
>
> JUROR NO. 7:  Right.  It's eleven to one.
>
> THE COURT:  It's eleven to one . . . Even if you've only taken one ballot, has that basically been the split since you began deliberating as to count one?
>
> JUROR NO. 7:  Yes.

importance of securing a verdict and ask jurors to reconsider potentially unreasonable positions.  In their stronger forms, these charges have been referred to as 'dynamite charges,' because of their ability to 'blast' a verdict out of a deadlocked jury.  The charge has also been called the 'third degree instruction,' 'the shotgun instruction,' and 'the nitroglycerin charge.'"  *United States v. Mason*, 658 F.2d 1263, 1265 n.1 (9th Cir. 1981) (citation omitted).

1   THE COURT:  Okay.  So, the one juror, would you say that the eleven-to-
2   one break is caused because of a juror's unwillingness to deliberate or just a
3   disagreement?

4   JUROR NO. 7:  I would call it a disagreement.  [¶] . . . [¶]

5   THE COURT:   As long as we don't have a lack of willingness to
6   deliberate. Sometimes you'll just have somebody sitting there with their
7   arms crossed. I actually had one that wouldn't get off their I–Phone . . .

    JUROR NO. 7:  We've been in a lot of conversation.
8
9   THE COURT: A lot of conversation.  Good.  A lot of dialogue?

10  JUROR NO. 7:  I believe so.

11  THE COURT:  Okay.  So, I know this was a very short trial, and you've
12  almost been deliberating as long as the evidentiary portion of the trial.
    What I am going to ask you to do is, I'm going to ask you to give us the rest
13  of the afternoon — are you willing to do that — and try to come to a
14  consensus.  [¶]  What I would like to do is, I do have a jury instruction that
    is used in a situation like this, and I have personally had some success with
15  this jury instruction.  So, it gives you a different perspective of how to . . .

16  JUROR NO. 7:  Approach it.

17  THE COURT:  [¶] . . . [¶]  So, the instruction I'm going to read to you is
18  CAL–CRIM 3551, and it's taken from a case that I actually would read
    from before it became a jury instruction.  And it's very well thought out.
19  Let me read it to you:

20
    *Sometimes juries that have had difficulty reaching a verdict are able to*
21  *resume deliberations and successfully reach a verdict.  Please consider the*
    *following suggestions.  [¶]  Do not hesitate to reexamine your views.  Fair*
22  *and effective jury deliberations require a frank and forthright exchange of*
    *views.  [¶]  Each of you must decide the case for yourself and form your*
23  *individual opinion after you have fully and completely considered all of the*
24  *evidence with your fellow jurors.  It is your duty as jurors to deliberate with*
    *the goal of reaching a verdict if you can do so without surrendering your*
25  *individual judgment.*

26
    [¶]  And I think that's the key phrase.
27

28  JUROR NO. 7:  Could you repeat that, please?

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

THE COURT:  It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment.  [¶]  So, essentially, we don't want somebody just to change their mind just to get it over with, or just to please somebody, or not change their minds for the same reason.  So we don't want anyone to surrender their individual judgment.  [¶]  Do not change your position just because it differs from that from other jurors or just because you or others want to reach a verdict.  Both the People and the Defendant are entitled to the individual judgment of each juror.  [¶]  It is up to you to decide how to conduct your deliberations.  You may want to consider new approaches in order to get a fresh perspective.  [¶]  Let me know whether I can do anything to help you further, such as give additional instructions or clarify instructions I have already given you.  [¶]  Please continue your deliberations at this time.  And if you wish to communicate with me further, please do so in writing.

And adding, I know that this instruction talks about fresh approaches, let me make a couple of suggestions of fresh approaches that you might want to take.  [¶]  For example, you may wish to consider having different jurors lead the discussions for a period of time, or you may wish to experiment with reverse role-playing by having those on one side of an issue present and argue the other side's position, and vice versa.  And this might enable you to better understand the other positions.  [¶]  So, I ask you, you've already been so generous with your time, I ask you to give me, say, two and a half more hours. So if you don't have a verdict on count one at 4:30, I'm not going to ask you to come back on Monday. Just give us some more time.

[      *      *      *      ]

The jurors continued their deliberations and returned a verdict later the same day that the supplemental instructions had been given.

(Ans., Ex. G at 36-39.)

On appeal, Jimenez claimed the supplemental jury instructions were impermissible because they (1) singled out the dissenting juror by asking for the numerical division of the votes; (2) were coercive because they set a deadline for deliberations; (3) urged that a verdict be reached; (4) failed to remind the jury that a prior instruction (CALCRIM No. 3550 ("Pre-Deliberation Instructions")) was still in effect; and (5) vouched for CALCRIM No. 3551 "with the result that the jury's independent judgment was displaced."  (*Id.* at 41.)

20

These claims were rejected by the state appellate court, which found "no improper coercion or *Allen* charge." (*Id.*) There was nothing inherently improper about asking for the numerical division of votes; the trial court did not set a deadline, but rather asked the jury to deliberate further while leaving open the possibility that agreement may not be reached; the jury was told to use its "independent judgment," not encouraged to displace their judgment "for considerations of compromise and expediency"; the trial court's response made repeating CALCRIM No. 3550 unnecessary: "So, essentially, we don't want somebody just to change their mind just to get it over with, or just to please somebody, or not change their minds for the same reason. So we don't want anyone to surrender their individual judgment." (*Id.* at 41.)

A criminal defendant tried by a jury is entitled to the "uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). However, a supplemental jury charge to encourage a deadlocked jury to try to reach a verdict is <u>not</u> coercive per se. *Allen v. United States*, 164 U.S. 492 (1896) (approving the "*Allen* charge"); *Lowenfield*, 484 U.S. at 237 ("The continuing validity of this Court's observations in *Allen* are beyond dispute.").

When faced with a claim of jury coercion, a reviewing court must "consider the supplemental charge given by the trial court 'in its context and under all the circumstances.'" *Lowenfield*, 484 U.S. at 237 (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)). Factors to consider are "(1) the form of the instruction, (2) the time the jury deliberated after receiving the charge in relation to the total time of deliberation and (3) any other indicia of coerciveness." *United States v. Steele*, 298 F.3d 906, 911 (9th Cir. 2002). There is "nothing talismanic about any single element either making the charge valid or invalid; the fundamental question is whether the jury was improperly coerced, thus infringing the defendant's due process rights." *Weaver v. Thompson*, 197 F.3d 359, 365 (9th Cir. 1999). Under AEDPA, not only does a reviewing court ask whether the instructions were coercive, it also asks whether the state court's determination on the coercion question was reasonable. *Parker v. Small*, 665 F.3d 1143,

21

1148 (9th Cir. 2011).

Here, there is no plausible showing that the supplemental jury instructions were coercive. In fact, the *Steele* factors weigh against a finding of coercion. The form of the instruction was proper --- it was a recitation to the jury of previously heard and legally correct instructions. The length of the jury's deliberations after the court's reinstruction --- the jury rendered its verdicts later that same day --- if anything weighs against a finding of coercion. They spent hours (not minutes) more in deliberations, which indicates that there were substantive discussions.

There are no other indications of coercion, as the state appellate court so thoroughly made clear. The jury was specifically and clearly instructed to (1) use its independent judgment; (2) not come to a verdict for improper reasons; and (3) be aware that a verdict may not be reached. The jury was simply asked to deliberate further.

The state appellate court's rejection of this claim was reasonable and is therefore entitled to AEDPA deference. This claim is DENIED.

## IV.    Assistance of Counsel

Jimenez claims defense counsel rendered ineffective assistance by failing to object to (A) prosecutorial misconduct, and (B) the court's instructions and its responses to the jury's questions. (Pet. at 23.)

The state appellate court rejected these claims.

### A.      Alleged Prosecutorial Misconduct

Jimenez claims the prosecutor committed misconduct by (1) arguing that evidence of grooming was sufficient for a conviction under section 288; (2) playing on the jury's sympathies and fears for the welfare of children; (3) arguing that there was no unanimity requirement under section 647.6; and (4) contending that B. Doe's subjective opinion was sufficient evidence to support a conviction under section 647.6.

A defendant's due process rights are violated when a prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation

1   marks omitted).  Under *Darden*, the first issue is whether the prosecutor's conduct was

2   improper; if so, the next question is whether such conduct infected the trial with

3   unfairness.  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  It is "the fairness of the

4   trial, not the culpability of the prosecutor" that is the touchstone of the due process

5   analysis.  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

6           **1.     Grooming**

7           The state appellate court found no misconduct:

8           To the contrary, during closing argument the prosecutor stated the three
9           elements that must be proven for a section 288, subdivision (a) conviction
            and then argued the specific evidence for each element.  For example, with
10          regard to the second element of touching the child victim with sexual
            intent, the prosecutor argued:  "Let's go on to the second touch; the touch
11          on the thigh.  There he is.  He's bought her the pair of shoes that no one
            wanted, and the father expressly told him not to buy.  And there he is in the
12          kitchen with her.  And she's putting on the shoes.  And he comes up, and he
            places his, hand on her thigh.  [¶] . . . [T]here was no reason to touch her.  It
13          was his conscious decision to reach out and put his hand on her.  Why?
14          Because he likes to touch children.  It excites him."

15          Moreover, our review shows that the prosecutor referenced the expert
16          testimony on grooming when arguing with respect to count 2, which
            alleged the section 647.6 offense of annoying or molesting a child under the
17          age of 18, not count 1.  Based on our review of the prosecutor's argument,
18          we see no reasonable likelihood that the jury construed or applied any of
            the prosecutor's comments on grooming 'in an objectionable fashion.'
19          [Citations and quotation marks omitted.]

20   (Ans., Ex. G at 44-45.)

21          Habeas relief is not warranted here.  The record shows that the prosecutor's

22   statements were permissible comments on how properly admitted evidence proved the

23   elements of the offenses.  Nothing shows that the prosecutor led the jury to believe that

24   evidence of grooming was sufficient on its own to prove guilt.  Because there was no

25   misconduct, defense counsel cannot have rendered ineffective assistance by failing to

26   object.  It is both reasonable and not prejudicial for defense counsel to forgo a meritless

27   objection.  *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).  The state appellate

28

United States District Court
Northern District of California

1   court's rejection of this claim was reasonable and is therefore entitled to AEDPA

2   deference.  This claim is DENIED.

3              **2.     Playing on Jury's Sympathies**

4       Jimenez claims the prosecutor played on the sympathies and fears of the jury by

5   referring to him as a "wolf in sheep's clothing."  The facts are:

> At the beginning of closing argument, the prosecutor stated: 'Once
> [defendant] had gained a position of trust and friendship with the father, he
> would go on to molest the children; oftentimes in their own homes, and in
> some cases even in their own beds. The age old proverb: He was the wolf
> dressed in sheep's clothing.' During rebuttal, the prosecutor argued that
> '[t]he sheep's clothing, they have been removed. What you have sitting
> over there, in no uncertain terms, is a wolf; a wolf that likes children. He
> likes to touch children. No more.'

(Ans., Ex. G at 45.)

On appeal, Jimenez asserted the prosecutor's words meant "that the prior three

victims were molested due to a lack of vigilance by their caretakers and that it was

necessary for this jury to send a message to the 'wolf in sheep's clothing' before he could

make [AL.] his fourth victim."  (*Id.*)

This claim was rejected by the state appellate court.  The prosecutor's comments

were "warranted by the evidence and were unlikely to make the jury's decision rooted in

sympathy and fear for children rather than the evidence":

> The 'wolf in sheep's clothing' comments were made with respect to the
> evidence showing defendant's pattern of finding his child victims by
> becoming active in a church, befriending a fellow church member who had
> a child who was a potential victim, and frequently visiting the home of the
> victim as an ostensible member of the family.

(*Id.* at 46.)

Habeas relief is not warranted here.  The comment was a reasonable inference the

prosecutor made after citing supporting evidence, rather than an appeal to fears and

sympathies.  *See United States v. Garcia-Guizar*, 160 F.3d 511, 520 (9th Cir. 1998) (a

prosecutor may refer to a defendant as a liar if commenting on the evidence and asking the

United States District Court
Northern District of California

jury to draw reasonable inferences).  The evidence showed that Jimenez repeatedly became close to a church friend in order to get closer to the friend's children.  A prosecutor's arguing facts supported by the record, and relevant to the charges, do not constitute a prohibited appeal to the jury's emotions, passions, or sympathy for the victim.  *Tan v. Runnels*, 413 F.3d 1101, 1113, 1115 (9th Cir. 2005).  The state appellate court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference.  This claim is DENIED.

### 3.    Unanimity Requirement

Jimenez claims the prosecutor committed misconduct by arguing during rebuttal that there was no unanimity requirement as to section 647.6 because no touching was required.  The state appellate court rejected this claim.  Although the prosecutor's argument "was not a model of clarity," the trial court provided correct instructions on unanimity, which the jury is presumed to have followed.  (Ans., Ex. G at 48.)

Habeas relief is not warranted here.  The trial court instructed the jury that it was "to follow the law as I explain it to you."  (Ans., Ex. B, Vol. 2 at 101.)  If the attorneys' statements conflict with the court's instructions, the jury "must follow my instructions." (*Id.*)  This Court must presume that the jury followed its instructions and applied the correct law.  *Marsh*, 481 U.S. at 211.  Jimenez has not overcome this presumption.  The state appellate court's rejection of this claim was therefore reasonable and is entitled to AEDPA deference.  This claim is DENIED.

### 4.    Normal Person Comments

Jimenez claims that during rebuttal the prosecutor misstated the "normal person" standard of section 647.6.  The state appellate court found that there was no such misstatement, and rejected the claim.

Habeas relief is not warranted here.  First, this Court must presume that the jury followed the instructions given by the trial court.  Second, this Court is bound by the state court's determination that the prosecutor correctly stated the law.  The state appellate court's rejection of this claim was therefore reasonable and is entitled to AEDPA

1   deference.  This claim is DENIED.

2        **B.**     **Failing to Object to the Court's Instructions**

3        Habeas relief is not warranted here.  This Court rejected the underlying claims

4   regarding alleged instructional error.  Because these claims lack merit, defense counsel

5   cannot have rendered ineffective assistance by failing to object.  It is both reasonable and

6   not prejudicial for defense counsel to forgo a meritless objection.  *See Juan H. v. Allen*,

7   408 F.3d 1262, 1273 (9th Cir. 2005).

8        The state court's rejection of these claims was reasonable and is therefore entitled to

9   AEDPA deference.  These claims are DENIED.

10   **V.**     **Cumulative Error Claim**

11        Jimenez claims that even if the errors individually do not justify relief, the

12   cumulative effect of them resulted in a fundamentally unfair trial.  In some cases, although

13   no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of

14   several errors may still prejudice a defendant so much that his conviction must be

15   overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003).  Where there is

16   no single constitutional error existing, nothing can accumulate to the level of a

17   constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

18        Habeas relief is not warranted here.  Jimenez has not shown any errors.  Therefore,

19   he cannot show there was cumulative error.  The state court's rejection of this claim was

20   reasonable and is therefore entitled to AEDPA deference.  This claim is DENIED.

21                           **CONCLUSION**

22        The state court's adjudication of Jimenez's claims did not result in decisions that

23   were contrary to, or involved an unreasonable application of, clearly established federal

24   law, nor did they result in decisions that were based on an unreasonable determination of

25   the facts in light of the evidence presented in the state court proceeding.  Accordingly, the

26   petition is DENIED.

27        A certificate of appealability will not issue.  Reasonable jurists would not "find the

28   district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

United States District Court
Northern District of California

26

1    *McDaniel*, 529 U.S. 473, 484 (2000).  Jimenez may seek a certificate of appealability from

2    the Ninth Circuit.

3          The Clerk shall enter judgment in favor of respondent and close the file.

4          **IT IS SO ORDERED.**

5    **Dated:**  December 12, 2016



WILLIAM H. ORRICK
United States District Judge

*United States District Court*
*Northern District of California*